UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| LAUREN KEAMMERER, )<br>)<br>   Plaintiff, )<br>)<br>   v. )<br>)<br>SERGEANT LLOYD J. ELDRIDGE, (with )<br>K9 Partner Bandit) Individually and in his )<br>official capacity, OFFICER BRANDON K. )<br>WAKELEY, Individually and in his )<br>Personal capacity, OFFICER JONATHON )<br>HALLORAN, Individually and in his )<br>Official capacity, PETER LAND in his )<br>official capacity as Chief of the Crown Point )<br>Police Department, and the City of )<br>Crown Point, )<br>)<br>   Defendants. ) | Cause No. 2:20-cv-376-PPS-JPK |

## OPINION AND ORDER

According to her amended complaint, Lauren Keammerer was viciously attacked by a Crown Point police dog while she was being arrested even though she was not actively resisting. She brought this action against the officers who were on the scene and allowed the attack to happen and against other officers who were there but did nothing to intervene once it commenced. Keammerer also says the officers maliciously prosecuted her and abused process to boot by filing a bogus charge against her. She also has sued the City of Crown Point and its police chief on the theory that there was lousy training relating to the handling of the police dog which amounts to an unconstitutional policy. The Defendants seek dismissal claiming that the individual defendants are entitled to qualified immunity and because the complaint otherwise fails to state a claim

[DE 25]. For the reasons detailed below, there is no reason to dismiss any of the claims, at least not at this point.

## BACKGROUND

Reading the allegations in the complaint as true, in late November 2019, officers were called to Keammerer's home regarding a possible drug overdose. [DE 24 at ¶ 13.] When an officer entered her room, he found a hypodermic needle and took her into custody without incident. *Id.* at ¶¶ 15-16. She must have been released at some point thereafter because on December 2, 2019, a warrant was issued for her arrest for this incident. *Id.* at ¶ 16. For reasons that are unclear, it took over a month to execute the arrest warrant. On the evening of January 8, 2020, Officers Wakeley and Halloran went into Keammerer's residence to execute the warrant while Sergeant Eldridge and his canine unit Bandit waited outside. *Id.* at ¶¶ 17-18. The officers entered Keammerer's second-floor bedroom and forcibly escorted her outside, barefoot and pregnant. This isn't an effort at a cute turn of a phrase. She was literally barefoot and pregnant. *Id.* at ¶¶ 17-18.

Once outside the safety of her home, the canine unit (Bandit) attacked her without provocation. *Id.* at ¶ 21. Bandit bit her left wrist and held on while shaking his head, causing severe injury. *Id.* After the incident, Keammerer claims the officers conspired to cover up this excessive force by filing false information, affidavits, and supplemental narratives pinning the blame on her, falsely accusing her of resisting arrest. *Id.* at ¶ 26.

**DISCUSSION**

To survive a motion to dismiss, a complaint must state "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8. The complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[T]he plaintiff [must] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Triad Assoc. v. Chicago Housing Authority*, 892 F.2d 583, 586 (7th Cir. 1989). At this early dismissal stage, I must "draw all reasonable inferences of fact in the non-movant's favor." *Gibson v. Am. Cyanamid Co.*, 760 F.3d 600, 605 (7th Cir. 2014).

**I.   Qualified Immunity**

Defendants raise the affirmative defense of qualified immunity in their motion to dismiss. "The doctrine of qualified immunity shields officers from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *City of Tahlequah v. Bond*, __ U.S. __, __, 2021 U.S. LEXIS 5310, at *4 (Oct. 18, 2021) (*per curiam*) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *see Rivas-Villegas v. Cortesluna*, __ U.S. __, __, 2021 U.S. LEXIS 5311, at *5 (Oct. 18, 2021) (*per curiam*); *see Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Whether Defendants are entitled to qualified immunity as a matter of law depends on two

-3-

questions: (1) whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right;" and (2) "whether the right was clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see Taylor v. City of Milford*, No. 20-1109, 2021 U.S. App. LEXIS 24829, at *9 (7th Cir. Aug. 19, 2021). "A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Rivas-Villegas*, __ U.S. at __, 2021 U.S. LEXIS 5311, at *5 (citing *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (*per curiam*)). Courts may not "define clearly established law at too high a level of generality." *City of Tahlequah*, __ U.S. at __, 2021 U.S. LEXIS 5310, at *4. "[S]pecificity is 'especially important in the Fourth Amendment context,' where it is 'sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.'" *Id.* (citing *Mullenix*, 577 U.S. at 12). Qualified immunity is an affirmative defense and the burden shifts to the plaintiff to defeat it. *Alexander v. Milwaukee*, 474 F.3d 437, 443-44 (7th Cir. 2007). The plaintiff "must identify a case that put [the officer] on notice that his specific conduct was unlawful." *Rivas-Villegas*, __ U.S. at __, 2021 U.S. LEXIS 5311, at *7. So, I consider whether Keammerer alleged a violation of a constitutional right and whether that right was clearly established.

I'll start by turning to the operative complaint [DE 14] to determine whether Keammerer pleaded factual allegations that support constitutional violations under the Fourth Amendment. The Fourth Amendment guarantees the right to be free from

unreasonable searches and seizures and protects against the use of excessive force during an arrest. CONST. AM. IV; *Graham v. Connor*, 490 U.S. 386, 394 (1989). "A police officer's use of force is unconstitutional if, judging from the totality of the circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest." *Payne v. Pauley*, 337 F.3d 767, 778 (7th Cir. 2003) (internal citation and quotations omitted). To determine whether the force is reasonable "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal quotation marks omitted). This inquiry is both fact intensive and highly sensitive to the circumstances of each case. *Id.* It is important to consider multiple factors, including: the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting or fleeing. *Id.* This isn't an exercise in Monday morning quarterbacking. The reasonableness of a particular use of force must be considered from the perspective of an officer on the scene, not with benefit of hindsight. *Id.*

The Seventh Circuit reversed summary judgment in favor of defendants in a canine excessive force lawsuit. *Alicea v. Thomas*, 815 F.3d 283 (7th Cir. 2016). Alicea burgled a home and then fled when he saw police, who eventually tracked him with a police dog hiding inside a pool. *Id.* at 286-87. The parties disagreed about whether Alicea complied with police orders, but it was undisputed that the police dog bit him and caused injury. *Id.* The officers argued that Alicea's previous flight from the crime

scene justified the use of force. *Id.* However, the Seventh Circuit was unpersuaded. "The sole fact a suspect has resisted arrest before cannot justify disregarding his surrender in deciding whether and how to use force." *Id.* at 289 (citing *Miller v. Gonzalez*, 761 F.3d 822, 829 (7th Cir. 2014)). Considering the totality of the circumstances – the suspect was no longer fleeing when force was applied and the officers did not fear for their safety – the use of force was not objectively reasonable. "Commanding a dog to attack a suspect who is already complying with orders clearly violates the principles set forth in *Holmes* and *Rambo*." *Id.* at 292 (referencing *Holmes v. Vill. Of Hoffman Estates*, 511 F.3d 673, 687 (7th Cir. 2007) and *Rambo v. Daley*, 68 F.3d 203, 207 (7th Cir. 1995)).

In a similar case, the Seventh Circuit also reversed a grant of summary judgment in a case considering whether an officer used excessive force in allowing a police dog to bite an arrestee after the arrestee had surrendered peacefully and without resistance. *Becker v. Elfreich*, 821 F.3d 920, 927 (7th Cir. 2016). In *Becker*, officers went to Becker's mother's home to arrest him for a felony that took place several weeks earlier. *Id.* at 923. After his mother told him the police were there to arrest him, Becker got dressed and came down the stairs with his hands over his head. *Id.* He was not hiding or exhibiting any aggressive behavior. *Id.* at 927. The officer released the police dog and it bit Becker, who kept his hands over his head even while being bitten. *Id.* The Court found that "once it became clear that Becker was not concealing himself, but was actually near the bottom of the staircase about thirty seconds after Officer Elfreich purportedly told him to come down, the force used by Officer Elfreich was no longer reasonable. *Id.* (citing

-6-

*Cyrus v. Town of Mukwonago*, 624 F.3d 856, 863 (7th Cir 2010)). The Court was not convinced by the officer's argument that Becker presented a risk, because the officer himself was armed and was being assisted by two other officers. *Id.* at 927-28. The Court also stressed the "totality of the circumstances" must be applied in excessive force cases. *Id.* at 928.

Here, Defendants argue they are entitled to qualified immunity because they acted reasonably while executing an arrest warrant. But, similar to *Becker*, no one could read the complaint and come to that conclusion. It may happen to turn out to be true, but at this point, where all I am tasked with is reviewing the sufficiency of the complaint, the argument is entirely premature.  Keammerer was seized when she was arrested and attacked by the police dog. [DE 24 at ¶¶ 20-24.] And accepting the allegations of the amended complaint as true, as I am required to do, the seizure was plainly unreasonable. She was not resisting arrest, and yet the defendants allowed the dog to maul her. In considering the totality of the circumstances, the amended complaint clearly alleges that the officers acted with excessive force when the police dog attacked Keammerer as she was being escorted from her home that January evening. A reasonable officer would have known that the release of a police dog, trained to seize a suspect, while Keammerer was restrained by two officers, was an unreasonable use of force.

What's more, "[t]here is no doubt that *Graham* clearly establishes the general proposition that use of force is contrary to the Fourth Amendment if it is excessive

under objective standards of reasonableness." *Saucier*, 533 U.S. at 201-02. It is true that I must be careful in not defining the constitutional right at issue with a high degree of generality. *City of Tahlequah*, __ U.S. at __, 2021 U.S. LEXIS 5310, at *4-5; *see Rivas-Villegas*, __ U.S. at __, 2021 U.S. LEXIS 5311, at *6. And Keammerer must identify a case that puts Defendants on notice that his specific conduct was unlawful. *City of Tahlequah*, __ U.S. at __, 2021 U.S. LEXIS 5310, at *7. But Keammerer identifies multiple cases, as discussed above, that put Defendants on notice of their allegedly unlawful conduct. *Becker*, 821 F.3d at 927; *Bey v. Cimarossa*, 202 F.3d 272, 2000 U.S. App. LEXIS 169 (7th Cir. 2000) (unpublished); *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994); *Byrd v. Brishke*, 466 F.2d 6, 10 (7th Cir. 1972); *Mendoza v. Block*, 27 F.3d 1357, 1362 (9th Cir. 1994); *Stone v. Porter Cty. Sheriff's Dep't*, No. 2:14-cv-287-RL-JEM, 2017 U.S. Dist. LEXIS 160365 (N.D. Ind. Sept. 28, 2017); *McFerson v. P.O. Brian Gilden & Gary,* No. 2:16-cv-186-JVB-JPK, 2020 U.S. Dist. LEXIS 241639 (N.D. Ind. Dec. 23, 2020).

It is equally true that I need not point to a case that is a factual replica to this case. As the Seventh Circuit has stated, "'[a] case directly on point is not required for a right to be clearly established and officials can still be on notice that their conduct violates established law even in novel circumstances.'" *Becker*, 821 F.3d at 929 (citing *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 528 (7th Cir. 2012)). Yet *Becker* and *Alicea* are cases where qualified immunity was denied, and denied at summary judgment no less, where a canine was deployed against a non-threatening and non-resisting suspect. *Id*; *Alicea*, 815 F.3d at 292; *see Bey*, 202 F.3d 272, 2000 U.S. App. LEXIS 169 (reversing the dismissal of

an excessive force case for qualified immunity); *Johnson v. Scott*, 576 F.3d 658, 661 (7th Cir. 2009) (discussing under a totality of the circumstances that deploying police dogs to bite and hold a suspect are not unconstitutional *per se*, but neither is "any use of a biting dog [] automatically reasonable."); *Stone*, 2017 U.S. Dist. LEXIS 160365, at *18-28 (denying summary judgment and qualified immunity for use of excessive force and failure to intervene after the suspect fled a traffic stop and the police dog was allegedly permitted to continue attacking the suspect after he was secured); *McFerson,* 2020 U.S. Dist. LEXIS 241639, at *5-11 (denying summary judgment for use of excessive force and qualified immunity after the suspect led police on a chase in a stolen vehicle and there were disputed facts as to the suspect's surrender when he was bitten by a police dog).

Additionally, other Circuits have denied qualified immunity where a canine unit was deployed on a non-threatening, non-resisting suspect. *Cooper v. Brown*, 844 F.3d 517, 525 (5th Cir. 2016) (denying qualified immunity where police dog bit the nonresistant suspect for one to two minutes, officer did not command the dog to release his bite until suspect had rolled onto his stomach and was in handcuffs, and not actively resisting arrest or attempting to flee was objectively unreasonable); *Edwards v. Shanley*, 666 F.3d 1289, 1296 (11th Cir. 2012) ("[T]he Graham factors compel the conclusion that [the officer] used unreasonable force when he subjected [Plaintiff] to five to seven minutes of dog attack, while [Plaintiff] was pleading to surrender and [the officer] was in a position to immediately effect [Plaintiff's] arrest."); *Castellani v. City of Atl. City*, 2017 U.S. Dist. LEXIS 113599, at *46 (D.N.J. July 20, 2017) ("Applying the evidence most

favorably to Plaintiff, a reasonable officer, even arriving late to the scene and assuming the other officers followed proper procedures, could not have believed that immediately unleashing his K9, without warning or without assessing the situation, to attack a person who, under Plaintiff's testimony, was not resisting arrest and restrained by five officers, was lawful."); *Priester v. City of Riviera Beach*, 208 F.3d 919, 927 (11th Cir. 2000) (allowing a police dog to attack and to bite a burglary suspect who was not yet handcuffed, but who had complied with officers' orders, posed no threat of bodily harm to the officers, and had made no attempt to flee or to resist arrest for two minutes was an unconstitutionally excessive use of force).

In other words, there is clearly established law that allowing a police dog to bite a restrained and non-resisting suspect equates to excessive force. Therefore, Defendants are not shielded by the defense of qualified immunity regarding Keammerer's claims, at least not at this point in the case.

## II. The *Monell* Claim

More than forty years ago the Supreme Court held that municipalities can be liable for their unconstitutional policies. "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).

Here, the Defendants argue that Keammerer's claims against the City of Crown Point must be dismissed because she failed to properly allege an express policy or widespread practice of excessive use of force by the City's canine units. Yet the amended complaint specifically alleges that the City and its police chief failed to train officers in handling of the canine unit and that this fact contributed to Keammerer's injuries. [DE 24 at ¶¶ 32-35.] And a failure to train officers can amount to a constitutional violation. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989). For the City of Crown Point to be liable under a failure to train theory, Keammerer must allege deliberate indifference, that is, that the City of Crown Point had actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation and it consciously or deliberately chose to disregard the harm. *Id.* at 388; *Flores v. City of S. Bend*, 997 F.3d 725, 731 (7th Cir. 2021). While Keammerer does not specifically use the phrase "deliberate indifference," she states in the amended complaint that the officers "intentionally, callously, and indifferently deprived [her] of her rights . . . ." [DE 24 at ¶ 34.] In sum, I find that she has alleged a sufficient state of mind required to survive dismissal on the *Monell* claim.

### III.     Abuse of Process, Malicious Prosecution and Conspiracy

Defendants claim that Keammerer improperly pursues a conspiracy claim and assert that she cannot do so without alleging an underlying tort that the conspirators agreed to commit. In other words, conspiracy is not an independent cause of action. It has to be linked to some other tort that the conspirators agreed to violate. Much of the

-11-

problem is with how Keammerer has drafted her amended complaint. There are not specific counts clearly delineating her claims.

A civil conspiracy involves two or more people who act to accomplish an unlawful purpose or accomplish a lawful purpose through unlawful means. *Boyle v. Anderson Fire Fighters Ass'n Local 1262, AFL-CIO*, 497 N.E.2d 1073, 1079 (Ind. Ct. App. 1986). But a plaintiff cannot have a separate civil cause of action for conspiracy unless it is associated with an underlying tort. *K.M.K. v. A.K.*, 908 N.E.2d 658, 663 (Ind. Ct. App. 2009) (citing *Boyle*, 497 N.E.2d at 1079). So, to the extent Keammerer is trying to bring a separate civil conspiracy claim unmoored from an underlying tort, that effort fails. But if Keammerer's claim is that the officers engaged in a conspiracy to commit some other tort, in this case, abuse of process or malicious prosecution, then the claim is viable so long as she has properly stated a claim for those underlying torts.

First, the Defendants make no argument related to the claim of malicious prosecution, so the claim that they conspired to maliciously prosecute Keammerer necessarily goes forward. A claim for malicious prosecution requires proof that the defendants (1) caused an action to be instituted against the plaintiff; (2) they did so maliciously; (3) without probable cause; and (4) that the action was terminated in the plaintiff's favor. *Estate of Mayer v. Lax, Inc.*, 998 N.E.2d 238, 249-50 (Ind. Ct. App. 2013). Keammerer alleges that the defendants fabricated "criminal charges . . . for purposes of shielding themselves from civil liability . . . [and] falsifying police reports, affidavits, narratives and information . . . ." [DE 24 at ¶¶ 35 (b)-(c)]. She also alleges that she

prevailed in the underlying case since it was dismissed. *Id.* at ¶¶ 36-37. The amended complaint therefore survives dismissal on the claim of conspiracy to maliciously prosecute Keammerer. As stated, the Defendants do not argue otherwise so nothing more need be said.

But what about the tort of abuse of process? Under Indiana law, it is a related but distinct tort from the tort of malicious prosecution. A plaintiff claiming abuse of process must show "(1) an ulterior purpose, and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding." *Hart v. Mannina*, 798 F.3d 578, 593 (7th Cir. 2015) (citing *Lindsay v. Jenkins*, 574 N.E.2d 324, 326 (Ind. App. 1991)). Additionally, "[t]here is no basis for an abuse of process claim if legal process is used to accomplish an outcome that the process was designed to accomplish." *Waterfield v. Waterfield*, 61 N.E. 3d 314, 328 (Ind. Ct. App. 2016). In other words, there is no liability for use of the legal process *unless* it has been used to achieve an end other than one which the process was designed to accomplish. *Central Nat'l Bank of Greencastle v. Shoup*, 501 N.E.2d 1090, 1095 (Ind. Ct. App. 1986). That is precisely what Keammerer has alleged here. She claims that the defendants used process, or caused its use, not to have Keammerer arrested but instead to use it as a cover story for their misdeeds. That is both an ulterior purpose and a willful act. It is enough to survive dismissal.

While the sum and substance of the amended complaint appears to be a better fit as a malicious prosecution claim, for now both the malicious prosecution and abuse of process theories (as well as the conspiracy claim) will go forward.

### IV. Punitive Damages

Defendants argue that Keammerer's request for punitive damages are not recoverable because they are immune. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270-271 (1981) (municipalities, including police officers acting in official capacities are immune from punitive damages). Keammerer concedes that municipalities and employees acting in official capacities are immune from punitive damages. [DE 28 at 12.] However, she argues that her claims against Sergeant Eldridge, Officer Wakeley, and Officer Halloran show a reckless and callous disregarded her constitutional rights, which allows her to seek punitive damages against them as long as she can prove her entitlement to them by clear and convincing evidence. While Keammerer may have an uphill battle ahead of her in proving deliberate indifference against the officers with clear and convincing evidence, that is a matter better addressed after discovery has revealed what actually happened on the day of her arrest. For now, it is enough to say that she has made sufficient allegations to allow the claim for punitive damages to go forward.

### CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART.**

To the extent Keammerer is attempting to bring a stand-alone conspiracy claim, it is **DISMISSED**. But the conspiracy to abuse process and maliciously prosecute Keammerer remains pending.

The prayer for relief with respect to punitive damages against the City of Crown Point and the officers in their official capacity is **DISMISSED**.

Otherwise, the Defendants' Motion to Dismiss [DE 25] is **DENIED**.

SO ORDERED on October 20, 2021.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT